IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RAY D. BULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1444 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Plaintiff Ray D. Bullins ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on April 10, 2013, alleging a disability onset date of March 1, 2013. (Tr. at 24, 144-145.)[2] His claim was denied initially (Tr. at 61-70, 84-87), and that determination was upheld on reconsideration (Tr. at 71-81, 89-96).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #6].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 24, 97-98.) Plaintiff attended the subsequent hearing on April 1, 2015, along with his attorney and an impartial vocational expert. (Tr. at 24, 35.) On May 14, 2015, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Act from March 1, 2013 through the date of the decision. (Tr. at 24-30). On October 17, 2016, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation omitted). "If there is evidence

to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the

4

can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2013, his alleged onset date. (Tr. at 26.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disease of the lumbar spine and compression fractures at L2, L3, and L5.

(Tr. at 26.) The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled a disability listing. (Tr. at 27.)

---

ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with additional limitations:

> [Plaintiff] is to alternate between sitting and standing at his workstation every two hours, with total standing and/or walking restricted to four hours per eight-hour day; he is to avoid more than frequent reaching with the bilateral upper extremities; he is to avoid more than occasional bending, balancing, crouching, stopping, kneeling, crawling, or climbing of stairs or ramps; and he is to avoid all exposure to unprotected hazards or any climbing of ropes, ladders, or scaffolds.

(Tr. at 27.) In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony that "he has chronic back pain that radiates to the legs," that he "estimated that he could lift up to 30 pounds, sit comfortably for up to 15 minutes at a time, and stand for up to 20 minutes at a time." (Tr. at 28, 47-48.) Plaintiff also testified that "approximately seven to eight days per month, he is in such pain that he remains in bed virtually all day." (Tr. at 28, 51-52.) While the ALJ concluded that Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms not entirely credible:

> The extensive medical records contained no mention of [Plaintiff's] remaining in bed all day, due to pain. The weight of the evidence indicated that [Plaintiff's] symptoms waxed and waned with treatment, and that he had a level of chronic pain that was subject to periodic exacerbation. The objective clinical findings were limited, and treatment consisted primarily of periodic injections, with no discussion of surgery….
> . . . .
>
> The undersigned has given considerable weight to the assessments of non-examining State agency consultants, who opined that the claimant was restricted to a limited range of light work. These assessments were generally consistent with the overall medical evidence.

(Tr. at 28) (internal citations omitted).

Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform his past relevant work. (Tr. at 28.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 29.) In sum, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and, therefore, is not disabled under the meaning of the Act. (Tr. at 30.)

After the ALJ issued her opinion on May 14, 2015, Plaintiff appealed to the Appeals Council and submitted additional evidence, specifically: an April 8, 2015 treatment note from Plaintiff's pain management clinic, an April 26, 2015 MRI of Plaintiff's thoracic and lumbar spine, and a May 28, 2015 new patient treatment note from endocrinologist Dr. Stephen South. (Tr. at 1-6, 358-74, 375-76.) The Appeals Council made this evidence part of the record and expressly considered it in conjunction with the record as a whole, but the Appeals Council ultimately "concluded that the additional evidence does not provide a basis for changing the [ALJ's] decision" and thus denied the request for review. (Tr. at 2.) Plaintiff now contends that the Appeals Council failed to properly consider the additional evidence and that the case should be remanded for further fact-finding.

In cases where the Appeals Council has considered new evidence submitted by the claimant but then denied review, on appeal the Court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec., Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). However, "the

regulations do not require the Appeals Council to articulate its rationale for denying a request for review." Meyer, 662 F.3d at 705–706. In this regard, the Fourth Circuit has held that the "lack of such additional fact finding does not render judicial review 'impossible'—as long as the record provides 'an adequate explanation of the Commissioner's decision.'" Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence, substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 635, 638–39 (4th Cir. 1996)).

"Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, [the Fourth Circuit has] reversed the ALJ's decision and held that the ALJ's denial of benefits was 'not supported by substantial evidence.'" Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96). Where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707. Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Court "must remand the case for further fact finding" in such an instance. Id. Thus, remand is appropriate if the Appeals Council accepts new evidence that is "conflicting" or "presents material competing testimony" or is "contradictory" or "calls into doubt any decision grounded in the prior medical reports." Gainforth v. Colvin, No. 2:15-CV-205, 2016 WL 3636840, at *7 (E.D. Va. May 9, 2016).

8

In the present case, Plaintiff appears to argue that the new evidence fills an evidentiary gap or competes with prior evidence underlying the ALJ's disability determination in three respects. (Pl.'s Br. [Doc. #9] at 7.) First, Plaintiff asserts that new evidence from the April 26, 2015 MRI indicates spinal defects not previously in the record before the ALJ. Second, Plaintiff contends that the May 28, 2015 treatment note from Dr. Stephen South includes a new diagnosis of severe osteoporosis. Finally, Plaintiff contends that the April 8, 2015 treatment note from Plaintiff's pain management clinic indicates that Plaintiff continued to have low back pain despite relief from previous injections and that surgery was being discussed. However, as the Commissioner contends and as discussed in detail below, the newly-submitted evidence is largely cumulative of evidence previously before the ALJ. (Def.'s Br. [Doc. #11] at 6-7.)

First, with respect to the April 26, 2015 MRI, the Court notes that this is not a case with a lack of imaging previously in the record. Indeed, included in the record before the ALJ was a March 2013 MRI (Tr. at 255-57), and even more importantly, a December 2014 MRI (Tr. at 290-91). Thus, the new April 26, 2015 MRI was dated only 4 months after the December 2014 MRI specifically considered by the ALJ. Moreover, there is no indication of any significant change in the April 26, 2015 MRI. Plaintiff contends that the April 26, 2015 MRI newly reflected "[b]ilateral lateral recess stenosis of L4-5 because of broad based disc herniation . . . [that] could possibly cause neural compression." (Pl.'s Br. at 4-5 (citing Tr. at 371).) However, Plaintiff's March 2013 MRI reflects "right paracentral disc protrusion . . . .with mild underlying disc bulge . . ., moderate central stenosis, [and] . . . borderline bilateral subarticular lateral recess stenosis" at L4-5. (Tr. at 255-56.) In treatment records reviewing

9

that 2013 MRI, Plaintiff's provider noted the stenosis at L4-5 and concluded that he thought Plaintiff's symptoms were "related to his L4-5 stenosis." (Tr. at 250-51.) Similarly, the December 2014 MRI reflects "[m]oderate but increased central stenosis with moderate bilateral subarticular lateral recess stenosis secondary to disc bulge, right paracentral disc protrusion, and facet arthropathy" at L4-L5, which was reviewed and considered in treatment records following the December 2014 MRI. (Tr. at 291, 267.) These MRIs and treatment records were part of the record and were explicitly considered by the ALJ. Thus, Plaintiff's April 28, 2015 MRI report of stenosis at L4-L5 "that could possibly cause neural compression" is cumulative. Similarly, to the extent that the April 28, 2015 MRI indicates that Plaintiff has facet degeneration at L4-5 that "is associated with mild edema and could be painful" (Tr. at 368), that finding is consistent with evidence the ALJ considered, including the December 2014 MRI and related treatment records reflecting "mild vertebral marrow edema" and "increased marrow edema signal at the L5 vertebral body." (Tr. at 290, 267.) All of these records and prior MRIs were considered by the ALJ when determining Plaintiff's limitations, and there is no basis to conclude that the April 28, 2015 MRI fills an evidentiary gap, competes with evidence underlying the ALJ's decision, or creates a conflict not addressed by the ALJ.[5]

---

[5] Plaintiff also contends that the April 26, 2015 MRI indicates additional, old compression fractures of the thoracic spine and an "[a]cute central superior endplate fracture or acute Schmorl's node at T11." (Pl.'s Br. at 5 (citing Tr. at 371).) However, there is no indication or findings correlating Plaintiff's thoracic defects with his alleged symptoms. (Tr. at 370-71.) Rather, the April 26, 2015 MRI notes that as to the thoracic spine, there is "[n]o retropulsed bone[,] [n]o traumatic disc herniation[,] [n]o cord lesion[, and] [n]o neural compression." (Tr. at 370.) The findings related to Plaintiff's thoracic spine fail to provide any additional support for Plaintiff's contentions regarding the severity and limiting effects of his pain or otherwise compete with the ALJ's analysis.

Plaintiff next contends that a May 28, 2015 treatment note from Guilford Medical Associates "establishes that [Plaintiff] was diagnosed with severe osteoporosis," requiring further fact-finding. (Pl.'s Br. [Doc. #9] at 5.) However, as the Commissioner notes, the record previously before the ALJ contained a bone scan from January 2015 that indicates osteoporosis in Plaintiff's left hip. (Def.'s Br. [Doc. #11] at 8 (citing Tr. at 288-89).) The ALJ specifically noted the bone scan in her decision. (Tr. at 27.) Thus, the record before the ALJ included a reference to osteoporosis. Moreover, to the extent Plaintiff now argues that the formal diagnosis of osteoporosis fills an evidentiary gap, Plaintiff fails to articulate how the osteoporosis diagnosis undermines the ALJ's determination regarding Plaintiff's functional limitations. Indeed, the ALJ considered Plaintiff's contentions and the course of treatment of his back pain, including with respect to the various fractures regardless of cause, and Plaintiff fails to establish how the diagnosis of osteoporosis would affect Plaintiff's allegations or the ALJ's determination regarding his back pain.

Finally, Plaintiff argues that an April 8, 2015 treatment note from his pain management clinic conflicts with the rationale underlying the ALJ's adverse credibility finding. However, like other prior treatment notes in the record, the April 8, 2015 note simply reflects that Plaintiff's treating providers were continuing to treat him with injections as long as the injections were effective, and if the injections were no longer effective would then consider a kyphoplasty as a potential treatment option. Specifically, a January 2015 treatment note from orthopedist Dr. Mark Dumonski explained that "[i]f surgery is indicated, [Plaintiff] is very interested in proceeding." (Tr. at 265.) However, Dr. Dumonski decided to first obtain bone scans to determine "whether a kyphoplasty would benefit [Plaintiff]," noting that Plaintiff had

"other potential etiologies of his pain" and stating that he wanted to "minimize the chance of performing a [surgery] that may not benefit [Plaintiff]." (Tr. at 265.) Similarly, the April 8, 2015 treatment note from Preferred Pain Management demonstrates that Dr. Spivey planned to "further discuss scheduling for an L5 kyphoplasty … if facet injections [did] not relieve [Plaintiff's pain]." (Tr. at 375.) In her decision, the ALJ noted that Plaintiff's treatment consisted largely of periodic facet injections, and Plaintiff experienced periodic exacerbation of his pain. (Tr. at 28.)[6] As the Commissioner contends, the treatment evidence before the ALJ and the new evidence both indicate that Plaintiff's physicians were pursuing conservative treatment. (Def.'s Br. [Doc. #11] at 8.) Further discussions of surgery were postponed pending further determination of the etiology of Plaintiff's pain and the continued use of facet injections. Indeed, following the January 2015 bone scans, Dr. Dumonski opined that "patient's pain [was] still facetogenic pain related and recommended the patient to continue to consider facet injection or a radiofrequency denervation procedure." (Tr. at 261.) The new evidence otherwise does not indicate whether Plaintiff's subsequent facet injections managed Plaintiff's pain, whether surgery was ultimately recommended or scheduled, or whether physicians considered Plaintiff disabled. Thus, the new evidence does not compete with the ALJ's decision or provide additional information that would mandate remand.

Having reviewed the record, including the new evidence the Appeals Council added to the record, the Court concludes that the newly-submitted evidence does not warrant

---

[6] Specifically, the record reflects injections in April 2013 that provided relief for several months; injections in October 2013 that again provided relief for several months; injections in March and April 2014 that provided relief for a shorter period of time; injections in October 2014 that did not provide much relief, injections in February 2015 that provided excellent relief at least through March 2015, and additional injections in April 2015. Nothing about the new evidence contradicts the treatment summary considered by the ALJ.

remand. The new evidence does not compete with evidence underlying the ALJ's credibility determination, nor does it fill evidentiary gaps the ALJ relied upon when reaching her disability determination. In this case, based on the sufficient explanation and analysis set out in the ALJ's decision, substantial evidence supports the ALJ's disability determination even in light of the newly-submitted evidence, and remand is not required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #10] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge